UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEROME MACK,

                              Petitioner,

        v.

J. COLLADO, SUP'T OF SHAWANGUNK
CORRECTIONAL FACILITY,

                              Respondent.

No. 21-CV-8541 (KMK)

ORDER ADOPTING REPORT &
RECOMMENDATION

---

Appearances:

Jerome Mack
Wallkill, NY
*Pro Se Petitioner*

Andrew R. Kass, Esq.
Orange County District Attorney's Office
Goshen, NY
*Counsel for Respondent*

KENNETH M. KARAS, United States District Judge:

        Jerome Mack ("Petitioner"), proceeding pro se, has filed a Petition for a Writ of Habeas

Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, challenging his May 4, 2015 conviction,

following a jury trial in New York State Supreme Court, Orange County ("County Court"), for

one count of Attempted Murder in the Second Degree, one count of Assault in the First Degree,

one count of Criminal Possession of a Weapon in the Second Degree, one count of Criminal Use

of a Firearm in the First Degree, one count of Conspiracy in the Fourth Degree, and one count of

Possession of Stolen Property in the Fourth Degree.  (*See generally* Pet. for Writ of Habeas

Corpus ("Pet.") (Dkt. No. 1).)

On October 29, 2021, the Court referred the Petition to Magistrate Judge Paul E. Davison.  (Dkt. No. 7.)  In a Report and Recommendation ("R&R") dated February 21, 2023, Judge Davison recommended that the Petition be denied in its entirety.  (*See* Report & Recommendation ("R&R") 1 (Dkt. No. 32).)  Petitioner filed Objections to the R&R on March 17, 2022.  (*See* Pet'r's Obj's to R&R ("Pet'r's Obj's") (Dkt. No. 34).)[1]  Respondent has not responded to the Objections.  (*See generally* Dkt.)  After a review of the R&R and Petitioner's Objections, the Court adopts the result recommended in the R&R and denies the Petition.

## I.  Background

The factual and procedural background of this case are set forth in Judge Davison's thorough R&R and the Court assumes the Parties' familiarity therewith.  (*See* R&R 2–6.)  The Court here summarizes only the facts relevant to addressing Petitioner's Objections to the R&R.

On October 9, 2014, Devon Simmons ("Simmons") was released from Otisville Correctional Facility.  (R&R 2.)  Upon release, Simmons had in his possession a temporary New York state identification card, a birth certificate, a social security card, schoolbooks, and a check in the amount of $1,254.63 from his commissary account.  (*Id.*)  He was picked up from the prison by Petitioner's co-defendant, Edgar Wilson ("Wilson").  (*Id.*)  Wilson told Simmons that Simmons' family members requested that he pick Simmons up when he was released.  (*Id.*)  Simmons got into the car with Wilson.  (*Id.*)  After driving for a short while, Wilson said he was lost and pulled the car over, and Simmons got out of the car, stating that he needed to relieve himself.  (*Id.*)  When Simmons got out of the car, Petitioner jumped out of the vehicle's trunk.  (*Id.*)  Petitioner had a gun and shot Simmons.  (*Id.*)  Simmons fled and was able to reach the

---

[1] Petitioner has also submitted a number of letters to the Court, which the Court has reviewed and referenced where relevant.  (*See* Dkt. Nos. 35–38.)

Otisville train station where he received help.  (*Id.*)  Later that day, Simmons was questioned by police, identified Petitioner as the shooter, and described the vehicle.  (*Id.*)

Trial began on April 15, 2015 and the jury returned a guilty verdict on May 4, 2015. (R&R 2.)  Petitioner was sentenced on June 1, 2015.  (*Id.*)  On September 19, 2017, Petitioner appealed his conviction through counsel.  (*Id.*)  Petitioner raised ten arguments in his appeal: (1) there was insufficient evidence to support Petitioner's conviction; (2) Petitioner preserved his right to appeal the insufficiency of the state's case; (3) Petitioner's conviction was against the weight of the evidence; (4) the verdict was repugnant; (5) trial counsel was ineffective for failing to object to a repugnant verdict; (6) the prosecution committed misconduct by violating the court's ruling on excited utterance; (7) the police lacked probable cause to detain and/or arrest Petitioner; (8) the prosecutor inappropriately injected his credibility into his summation; (9) Petitioner's trial counsel was ineffective for failing to seek a *Rodriguez* hearing; and (10) Petitioner received an excessive sentence.  (*Id.* at 3–4.)

On May 21, 2018, the Appellate Division, Second Department granted Petitioner's request to file a pro se supplemental brief.  (R&R 4.)  Petitioner raised six arguments in his supplemental brief: (1) the cell site location information ("CSLI") that was obtained via a warrantless search should have been suppressed; (2) Petitioner was denied his right to counsel at his arraignment; (3) the prosecutor committed misconduct by allowing a witness to bolster the victim's testimony; (4) Petitioner received ineffective assistance of counsel; (5) the trial court abused its discretion by allowing evidence of prior bad acts and prior convictions into evidence; and (6) Petitioner was denied his right to counsel when the trial court improperly denied his newly appointed counsel adequate time to prepare and denied Petitioner counsel at his arraignment.  (*Id.*)  With respect to Petitioner's allegation that he received ineffective assistance

3

of counsel, he specifically argued in his pro se supplemental brief that: (1) his counsel failed to argue that there was no probable cause to stop, detain, and arrest Petitioner; (2) his counsel failed to argue that the prosecutor committed misconduct when the prosecutor became an unsworn witness; (3) his counsel committed myriad errors when he failed to object to the numerous instances where Petitioner's due process rights were violated; (4) his counsel failed to object when the prosecutor committed misconduct by failing to correct false testimony; (5) his counsel failed to object when the prosecutor committed misconduct by misrepresenting the evidence; (6) his counsel failed to object to the insufficiency of the evidence for the criminal possession charge; and (7) his counsel failed to request a circumstantial evidence jury charge. (*Id.*)

On May 27, 2020, the Appellate Division affirmed the judgment against Petitioner. *See People v. Mack*, 122 N.Y.S.3d 547 (Mem) (App. Div. 2020). Specifically, the Appellate Division found that Petitioner's arguments concerning the legal sufficiency of the evidence and the improper remarks by the prosecution were unpreserved for appellate review. *Id.* at 548.

On June 18, 2020, Petitioner's appellate counsel submitted a letter requesting leave to appeal the Appellate Division's decision to the Court of Appeals. (R&R 5.) Petitioner's appellate counsel specifically requested review of the arguments that the evidence was insufficient, Petitioner's uncharged criminal behavior should have been suppressed, the verdict was repugnant, and Petitioner's prior counsel was ineffective for failing to object to the repugnant verdict. (*Id.*) On June 29, 2020, a second attorney submitted a letter requesting leave to appeal the Appellate Division's decision, which specifically argued that the Appellate Division erred by finding that it was permissible to conduct a warrantless search of Petitioner's cell phone location; finding that trial counsel was effective in spite of trial counsel's failure to

request a *Rodriguez* hearing; and finding that there was probable cause to arrest Petitioner.  (*Id.* at 5–6.)

By papers dated June 23, 2020, Petitioner submitted an affidavit in support of his leave application that raised three points from his supplemental pro se brief: (1) the cell site location information should have been suppressed; (2) there was no probable cause to stop, detain, and arrest Petitioner; and (3) the prosecutor failed to engage in the proper process regarding the victim's confirmatory identification of Petitioner.  (R&R at 6.)  On September 18, 2020, the Court of Appeals summarily denied Petitioner's request for leave to appeal.  *People v. Mack*, 155 N.E.3d 798 (Table) (N.Y. 2020).

## II.  Discussion

### A.  Standard of Review

#### 1.  Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner has done here, the Court reviews de novo the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may

adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and quotation marks omitted). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

## 2. Habeas Corpus Standard of Review

Petitions for writs of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an

objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof.").

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is "an unreasonable application of clearly established Federal law" if a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08 (alterations and quotation marks omitted). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citations and quotation marks omitted); *see also id.* at 420 (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks

omitted).  Consequently, a federal court must deny a habeas petition in some circumstances even

if the court would have reached a conclusion different than the one reached by the state court,

because "even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id.* at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of

Appeals might have reached a different conclusion as an initial matter, it was not an

unreasonable application of our precedent for the [state court] to conclude that [the petitioner]

did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012)

("Although we might not have decided the issue in the way that the [New York State] Appellate

Division did—and indeed we are *troubled by the outcome we are constrained to reach*—

we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation

omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be

correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir. 1997) ("When

reviewing a habeas petition, the factual findings of the New York Courts are presumed to be

correct." (alteration and quotation marks omitted)).  The petitioner must rebut this presumption

by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d

217, 233 (2d Cir. 2003) (same).

Finally, only Federal law claims are cognizable in habeas proceedings.  "[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions.  In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*,

502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof,

a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

3.  Procedural Requirements for Habeas Corpus Relief

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements of AEDPA, *see* 28 U.S.C. § 2254.  Before the Court reviews the merits of a habeas corpus petition, the Court must determine whether Petitioner complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.

a.  Timeliness

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of limitations.  *See* 28 U.S.C. § 2244(d)(1).  The statute of limitations is tolled if any state post-conviction proceedings are pending after the conviction becomes final.  *See* 28 U.S.C. § 2254(d)(2).  The limitations period is also subject to equitable tolling, which is warranted only when a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances . . . prevented timely filing." *Finley v. Graham*, No. 12-CV-9055, 2016 WL 47333, at *5 (S.D.N.Y. Jan. 4, 2016) (alterations in original) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

b.  Procedural Bar

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (quotation marks omitted).  A judgment is "independent" if the "last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quotation marks omitted).  A procedural bar is

9

"adequate . . . if it is based on a rule that is firmly established and regularly followed by the state in question." *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (quotation marks omitted).  In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

### c.  Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .").  To satisfy this requirement, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").  This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement.  *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . .").  First, "a petitioner [must] fairly present

federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (alterations and quotation marks omitted); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same). This requirement is satisfied if the claim is presented in a way that is "likely to alert the [state] court[s] to the claim's federal nature," *Carvajal*, 633 F.3d at 104 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)), and the state courts are "apprise[d] . . . of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition," *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same). In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement. *Carvajal*, 633 F.3d at 104 (quotation marks omitted). A petitioner may satisfy this requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis[;] (b) reliance on state cases employing constitutional analysis in like fact situations[;] (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution[;] and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (quotation marks omitted). However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted). Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to

11

secure [state] appellate review of the denial of that claim." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds*, *Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *report and recommendation adopted*, 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011).  In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez*, 394 F.3d at 74.  If the petitioner fails to exhaust his or her state remedies through the entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods.  *See Klein*, 667 F.2d at 282–83 (noting that, "where the petitioner did not utilize all the appellate procedures of the convicting state to present his claim . . . the petitioner must utilize available state remedies for collateral attack of his conviction in order to satisfy the exhaustion requirement"); *Bernardez v. Bannon*, No. 12-CV-4289, 2016 WL 5660248, at *3 (S.D.N.Y. Sept. 29, 2016).  For example, in New York a defendant may challenge a conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal . . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under [New York Criminal Procedure Law] § 440.10.), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).  In addition, New York permits only one application for direct review.  *See Jiminez v. Walker*, 458 F.3d 130, 149

(2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York

law] . . . . ").  "New York procedural rules bar its state courts from hearing either claims that

could have been raised on direct appeal but were not, or claims that were initially raised on

appeal but were not presented to the Court of Appeals."  *Sparks v. Burge*, No. 12-CV-8270, 2012

WL 4479250, at *4 (S.D.N.Y. Sept. 18, 2014).

Accordingly, in those situations, a petitioner no longer has any available state court

remedy, and the claims are therefore deemed exhausted, but procedurally defaulted.  *See

Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to

adequately present his federal claim to the state courts so that the state courts would deem the

claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and

quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the

reality that deeming an unpresented claim to be exhausted is "cold comfort").  A dismissal of a

habeas petition on such grounds is a "disposition . . . on the merits."  *Carvajal*, 633 F.3d at 104

(quotation marks omitted).  "An applicant seeking habeas relief may escape dismissal on the

merits of a procedurally defaulted claim only by demonstrating 'cause for the default and

prejudice' or by showing that he is 'actually innocent' of the crime for which he was

convicted."  *Id.* (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388

(2004) (holding that "a federal court will not entertain a procedurally defaulted constitutional

claim in a petition for habeas corpus absent a showing of a cause and prejudice to excuse the

default," or showing that the petitioner "is actually innocent of the underlying offense").

B.  Analysis

1.  Procedural Bar

Judge Davison determined that Petitioner's first, third, fifth, and sixth claims were

procedurally barred, along with the majority of Petitioner's fourth claim. (Pet'r's Obj's 3–6, 13–

20, 25–26.)  Petitioner objects that each of these determinations was incorrect, and the Court will address Petitioner's claims in turn.

### a.  First Claim

As to his first claim, Petitioner argues that Judge Davison could not rely on the Appellate Division's finding that he had failed to preserve this claim in determining that Petitioner's claim was exhausted but procedurally barred because the trial record reveals that the issue was preserved for appeal.  (Pet'r's Obj's at 4–5.)

As discussed above, a federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."  *Downs*, 657 F.3d at 101 (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)).  Here, the Appellate Division ruled that Petitioner's "contention that the evidence was legally insufficient to support his convictions [was] unpreserved for appellate review[,]" but did not provide further clarification as to the basis for this conclusion.  *People v. Mack*, 122 N.Y.S.3d 547, 548 (App. Div. 2020).

However, Judge Davison determined, based on the cases the Appellate Division relied upon, that the basis for its decision was the contemporaneous objection rule.  (R&R 12.)  The Court agrees with Judge Davison's determination and also with his conclusion that lack of preservation is an adequate and independent state rule that is firmly established and regularly followed.  *See Downs*, 657 F.3d at 104 (explaining that the Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule").  Petitioner argues that the trial record reveals that the Appellate Division was mistaken and that his counsel did, in fact, preserve the issue for appeal, because counsel made the motion both in an omnibus pre-trial filing and in a motion to dismiss at the close of the People's case-in-chief.  (Pet'r's Obj's 3; *id.* Ex. A at 2–5 (Dkt. No. 34-1).)  However, Petitioner

14

misconstrues the burden he faces because, as the Second Circuit has made clear, the Court must

defer to the Appellate Division's finding that the contemporaneous objection rule foreclosed

Petitioner's objection. *See Beniquez v. Johnson*, No. 21-CV-1467, 2023 WL 3948738, at *8

(S.D.N.Y. June 12, 2023) (explaining that "federal habeas review is foreclosed 'as long as the

state court explicitly invokes a state procedural bar rule as a separate basis for decision'"

(quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)).

To overcome the procedural bar, Petitioner must advance a claim of actual innocence that

is "both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). To be

credible, an actual innocence claim "requires petitioner to support his allegations of

constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298,

324 (1995). To be compelling, "petitioner must demonstrate that 'more likely than not, in light

of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or

to remove the double negative, that more likely than not any reasonable juror would have

reasonable doubt.'" *Rivas*, 687 F.3d at 541 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Here, Petitioner argues that "this particular case involves one witness['s] momentary side[-

]view[,] periphery glance of the assailant, which is contrary to the scientific D.N.A. evidence

presented by the state[,]" which the Court interprets as Petitioner arguing that his conviction was

against the weight of the evidence because it was primarily due to Simmons' eyewitness

testimony. (Pet'r's Obj's 6.) However, Petitioner's objection falls short, as he fails to provide

any new evidence that would support his claim that he is innocent. *See Thomas v. Kirkpatrick*,

No. 18-CV-51, 2023 WL 5510116, at *13 (S.D.N.Y. Aug. 25, 2023) (finding actual innocence

claim failed where petitioner did "not offer any new evidence to support his allegation of

innocence"); *Beniquez*, 2023 WL 3948738, at *8 (finding petitioner's claim was procedurally barred where petitioner had failed to show "that a miscarriage of justice occurred").

Thus, the Court adopts Judge Davison's finding that Petitioner's claim concerning insufficiency of the evidence against him is procedurally barred because the Appellate Division had an adequate and independent basis in state law to deny Petitioner's claim.[2]

### b.  Third, Fourth, and Sixth Claims

Petitioner argues that Judge Davison erred in finding that these claims were exhausted but procedurally barred because Petitioner failed to raise the claims in his applications for leave to appeal to the New York Court of Appeals as Petitioner's counsel included a statement directing the Court of Appeals to consider all issues Petitioner raised in his pro se application. (Pet'r's Obj's 13–20.)

As discussed above, Petitioner and counsel representing him filed three separate leave applications to the Court of Appeals, which raised specific claims that Petitioner or his counsel requested that the Court of Appeals review.  *See supra* § I.  While the leave applications stated that the Petitioner's briefs were annexed, the Second Circuit has held that arguing certain claims in the leave application "while attaching an appellate brief without explicitly alerting the state court to each claim raised [in the brief] does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction."  *Jordan v. LeFevre,* 206 F.3d

---

[2] Petitioner argues that because the Appellate Division reached the merits of his claim after determining it was procedurally defaulted, Judge Davison erred by failing to review the merits.  (Pet'r's Obj's 6.)  However, the law is clear that where a state court rules in the alternative on the merits in addition to finding a claim procedurally barred, the merits claim is not preserved for federal review.  *See Fama v. Comm'r Corr. Servs.*, 235 F.3d 804, 810 n.4 (2d Cir. 2000) (noting that "where a state court says that a claim is not preserved for appellate review and then ruled in any event on the merits, such a claim is not preserved" (quotation marks omitted)).

196, 198–99 (2d Cir. 2000); *see also Galdamez,* 394 F.3d at 74–76 (citing *Jordan* with approval but noting that if leave application had pressed no individual claims and *only* referenced the briefs, the "fair import" of this would be that review was requested and the issues in the brief would be fairly presented); *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (holding that Court of Appeals application that mentioned only one point meant that other two points in attached brief were not exhausted).[3]  Thus, the Court agrees with Judge Davison that Petitioner's third and sixth claim, along with almost all of his arguments in support of his fourth claim for ineffective assistance of counsel, were exhausted but procedurally barred.

### c.  Fifth Claim

Petitioner argues that Judge Davison incorrectly found that his fifth claim was exhausted but procedurally barred because Petitioner failed to sufficiently alert the Court of Appeals to the constitutional nature of his claim.  (Pet'r's Obj's 25–26.)  The Court finds that Petitioner's objection is meritless.

---

[3] The cases Petitioner cites are not to the contrary and state the clear law established by the Second Circuit; however, this law is inapplicable to Petitioner's case because his leave applications each set out the specific claims that Petitioner requested that the Court of Appeals review but failed to reference the claims he now seeks to press. *See Mitchell v. Superintendent*, No. 20-CV-1189, 2022 WL 16964583, at *11 (W.D.N.Y. Nov. 16, 2022) (noting that "where a leave application *requests review of all the issues* outlined in the legal memoranda presented to the Appellate Division, all such claims are considered to have been presented for review to the Court of Appeals, New York's highest court, and, thus, exhausted for purposes of subsequently seeking habeas relief" (emphasis added)); *Parrish v. Lee*, No. 10-CV-8708, 2015 WL 7302762, at *9 (S.D.N.Y. Nov. 18, 2015) (explaining that a "leave application [that] emphasize[s] one of [Petitioner's] claims will not be deemed to have abandoned the other claims, as long as it is made explicit to the Court of Appeals that [Petitioner] intends to press all of them" through an explicit and specific reference to those other claims in the application); *Morgan v. Bennett*, 204 F.3d 360, 369–70 (2d Cir. 2000) (holding petitioner had exhausted claims where leave application did not address any claims specifically, but had requested the Court of Appeals "consider and review *all issues outlined in defendant-appellant's* brief and *pro se supplemental brief*" (emphasis in original)).

As Judge Davison pointed out, Petitioner's pro se supplemental brief included an argument that the trial court had erred by admitting evidence of Petitioner's prior bad acts and in support of this argument cited only state court cases that did not employ constitutional analysis. (R&R 23.)  Petitioner asserts that his brief did assert that Petitioner's due process and fair trial rights were violated.  (Pet'r's Obj's 26.)

Petitioner's objection misses the mark.  As noted above, when raising claims for a state court's review, a petitioner must refer to specific federal constitutional provisions or concepts. *See, e.g.*, *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (minimal reference to the constitution satisfies the exhaustion requirement); *see also De La Cruz v. Kelly*, 648 F. Supp. 884, 888 (S.D.N.Y. 1986) (finding that petitioner alerted the state court of the constitutional aspect of his claims when he argued that the ruling denied him a fair trial and cited the Fourteenth Amendment).  The legal doctrine asserted in state court does not need to be identical to that raised in the *habeas* petition, but "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature."  *Daye*, 696 F.2d at 192.

Notice will be found when a petitioner's brief shows "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."  *Ramirez v. Att'y Gen. of State of N.Y.*, 280 F.3d 87, 95 (2d Cir. 2001) (quoting *Daye*, 696 F.2d at 194).  This liberal standard protects petitioners who rely on constitutional principles without citing "book and verse on the federal constitution," while ensuring that state courts have the opportunity to "pass upon and correct"

18

alleged violations of federal rights.  *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971) (citations omitted).

As an initial matter, Petitioner did assert in his supplemental pro se brief that the introduction of his prior bad acts implicated "due process" and his right to a "fair trial," but he did not elaborate in his brief on the nature of these claims.  (Dkt. No. 21-5 at 70.)  A petitioner's passing reference to a "fair trial" or "due process" in his brief, without more, is insufficient to fairly present any constitutional claim to state courts.  *See, e.g.*, *Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984) (holding that petitioner's appellate argument that the introduction of certain evidence "deprived him of fair trial [sic] and due process of law" was insufficient to "put the state courts on notice" of a federal constitutional claim); *Kirksey v. Jones*, 673 F.2d 58, 60 (2d Cir. 1982) (concluding that petitioner's reference in his state court brief to denial of a "fair trial" did not "sufficiently alert[] the Appellate Division" to alleged due process violations); *Clemmons v. Lee*, No. 13-CV-4969, 2021 WL 6750664, at *13 (S.D.N.Y. Oct. 28, 2021) (petitioner failed to provide sufficient notice to state court where appeal brief relied on state law and asserted that evidentiary errors "deprived the [petitioner] of a fair trial"), *report and recommendation adopted*, No. 13-CV-4969, 2022 WL 255737 (S.D.N.Y. Jan. 27, 2022); *Doumbia v. New York Dep't of Civ. Servs.*, No. 11-CV-7677, 2015 WL 3619536, at *17 (S.D.N.Y. June 9, 2015) (finding that petitioner did not exhaust federal claim by alleging that "prosecutor's purported disregard of the court's *Sandoval* ruling violated Petitioner's 'constitutional due process right to [a] fair trial'"); *Jean-Baptiste v. Artus*, No. 09-CV-5920, 2012 WL 12906287, at *12 (S.D.N.Y. June 19, 2012) ("[W]hile Petitioner's appeal brief referenced 'due process' and his right to a 'fair trial,' . . . these references are insufficient to

support a finding that Petitioner fairly presented this claim to the state courts." (citation

omitted)), *report and recommendation adopted*, 2016 WL 7118280 (S.D.N.Y. Dec. 6, 2016).

Moreover, as Judge Davison pointed out, Petitioner did not rely on federal cases or any

state cases that applied constitutional analysis.  (R&R 23.)[4]  The Court has reviewed Petitioner's

brief and found that Petitioner did not state his claim in a fashion that indicated a constitutional

issue was present, and a claim related to the improper introduction of bad acts evidence does not,

on its face, implicate Petitioner's constitutional due process or fair trial rights.  (Dkt No. 21-5 at

70–75.)  *See Poquee v. Ercole*, No. 06-CV-45, 2007 WL 1218722, at *3 (N.D.N.Y. Apr. 25,

2007) (noting that claims involving improper admission of prior bad acts raise "solely state law

issues and do not raise federal constitutional claims for purposes of a habeas corpus petition");

*Hirsch v. Plescia*, No. 03-CV-1617, 2005 WL 2038587, at *7 (E.D.N.Y. Aug. 23, 2005) (same).

Thus, the Court finds that Judge Davison properly determined that Petitioner's claim was

exhausted but procedurally barred.  *See, e.g.*, *Clemmons*, 2021 WL 6750664, at *13 (explaining

that "claims based on alleged evidentiary errors under state law – either individually or

cumulatively – involve no specific constitutional right and are not clearly within mainstream

constitutional litigation" (quotation marks omitted)).

---

[4] Petitioner concedes that none of the state court cases he cited employed constitutional analysis but insists that one of the cases he cited, *People v. Ingram*, 522 N.E.2d 439 (N.Y. 1988), should have put the Court of Appeals on notice because *Ingram* cites *People v. Schwartzman*, 247 N.E.2d 642 (N.Y. 1969), which "went all the way to the Supreme Court of the United States regarding the issues of admission of uncharged crimes denied defendant a fair trial and due process . . . in violation of [the Constitution] . . . [.]"  (Pet'r's Obj's 26.)  *Ingram*, 522 N.E. 2d at 441.  The Court notes that Petitioner's argument fails because a single reference included in a cited authority is far too remote an invocation of a federal constitutional right to provide notice to a reviewing state court.  *See Ramirez*, 280 F.3d at 95 (outlining methods by which petitioner may provide notice of his federal constitutional claims to state courts).

2.  CSLI

Petitioner next argues that Judge Davison erred in finding that the good faith exception

applied to the government's use of CSLI retrieved by subpoena at his trial, even though such use

was in violation of the Supreme Court's holding in *Carpenter v. United States*, 138 S. Ct. 2206

(2018) that the Fourth Amendment requires that the government seek a search warrant to access

such data.  *Id.* at 2206.  (Pet'r's Obj's 7–12.)  The Court finds Petitioner's objection is without

merit.

At the time that the prosecution sought an order under § 2703 for Petitioner's CSLI, the

Circuits which addressed the issue had found that historical CSLI acquired through court orders

issued under § 2703(d) fell under the third-party doctrine, and thus did not require a warrant

under the Fourth Amendment.  *See*, *e.g.*, *United States v. Carpenter*, 819 F.3d 880, 890 (6th Cir.

2016) ("[W]e hold that the government's collection of business records containing cell-site data

was not a search under the Fourth Amendment."), *rev'd*, 132 S. Ct. 2206 (2018); *United States v.

Graham*, 824 F.3d 421, 437–38 (4th Cir. 2016) (en banc) ("Applying the third-party doctrine,

consistent with controlling precedent, we can only conclude that the Fourth Amendment did not

protect [the service providers'] records of [t]he [d]efendants' CSLI.  Accordingly, we hold that

the Government legally acquired those records through § 2703(d) orders."); *United States v.

Davis*, 785 F.3d 498, 511–13 (11th Cir. 2015) (en banc) ("Based on the SCA and governing

Supreme Court precedent, we [] conclude the government's obtaining a § 2703(d) court order for

the production of [the service provider's] business records did not violate the Fourth

Amendment."); *United States v. Guerrero*, 768 F.3d 351, 361 (5th Cir. 2014) ("The district court

[] properly admitted the historical cell site location data [obtained pursuant to § 2703(d)] at

trial."); *In re Application of U.S. for an Ord. Directing a Provider of Elec. Commc'n Serv. to

Disclose Recs. to Gov't*, 620 F.3d 304, 319 (3d Cir. 2010) (vacating magistrate judge's order

21

denying the government's application under § 2703(d) for failure to show probable cause because "[a] review of the statutory language suggests that the Government can proceed to obtain records pertaining to a subscriber . . . [through] an order under § 2703(d)," which did not require a showing of probable cause).  Although the Second Circuit had not addressed § 2703(d) directly, it had held in *United States v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017) that the Government "did not need to obtain a warrant to collect IP address routing information" pursuant to 18 U.S.C. §§ 3121–27, a related statute.  *Id.* at 97.

In 2018, the Supreme Court found in *Carpenter* that "[g]iven the unique nature of cell phone location information, the fact that the Government obtained the information from a third party does not overcome [the defendant's] claim to Fourth Amendment protection."  138 S. Ct. at 2220.  Thus, the Court held that "[t]he Government's acquisition of the cell-site records [pursuant to an order under § 2703(d)] was a search within the meaning of the Fourth Amendment" and "the Government must generally obtain a warrant supported by probable cause before acquiring such records."  *Id.* at 2220–21.

The Supreme Court has held that "[w]hen evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure."  *Illinois v. Krull*, 480 U.S. 340, 347 (1987).  However, there are exceptions to the exclusionary rule.  For example, under the good faith exception, the exclusionary rule does not apply when law enforcement officers "act with an objectively reasonable good-faith belief that their conduct is lawful."  *Davis v. United States*, 564 U.S. 229, 238 (2011) (quotation marks omitted); *see also United States v. Aguiar*, 737 F.3d 251, 259 (2d Cir. 2013) (noting that the good faith exception covers "searches conducted in objectively reasonable reliance on binding appellate precedent" existing at the time

of the search).  In *United States v. Zodhiates*, 901 F.3d 137 (2d Cir. 2018), the Second Circuit found that the good faith exception applied to historical call data that revealed the owner's location produced pursuant to the SCA prior to the Supreme Court's decision in *Carpenter*, because the search was made in "objectively reasonable reliance on appellate precedent existing at the time of the search." *Id.* at 143.  The Second Circuit has since affirmed that holding specifically in the context of historical CSLI obtained pursuant to an order under the SCA prior to *Carpenter* being decided.  *See United States v. Felder*, 993 F.3d 57, 75 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 597 (2021) (holding that district court did not err in finding good faith exception applied to "historical [CSLI] obtained pursuant to a court order supported by less than probable cause").  Thus, the Court agrees with Judge Davison that the good faith exception applies to the People's use of Petitioner's CSLI at trial.

### 3.  Ineffective Assistance of Counsel

Petitioner claims that Judge Davison incorrectly rejected his claim that his trial counsel was ineffective for failing to request a *Wade* or *Rodriguez* hearing concerning Simmons' identification of him.  (Pet'r's Obj's 21–25.)

The Sixth Amendment of the United States Constitution provides that a criminal defendant shall enjoy the right to effective assistance of counsel.  *See Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam).  A claim for ineffective assistance of counsel is analyzed under the two-part test set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984): to be entitled to relief, a petitioner must show that (1) his or her attorney's conduct was constitutionally deficient because it fell below an "objective standard of reasonableness," *id.* at 687–88, and that (2) the petitioner was prejudiced by the ineffective representation—that is, but for the deficiency, there is a reasonable probability that "the result of the proceeding would have been different," *id.* at 694.

To determine whether counsel's conduct is deficient under the first prong, "the court must determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Lindstadt v. Keane*, 239 F.3d 191, 198–99 (2d Cir. 2001) (alterations and quotation marks omitted).  A petitioner cannot meet this prong based solely on disagreements with counsel's strategy or advice.  Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is Petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Bonilla v. Lee*, 35 F. Supp. 3d 551, 575 (S.D.N.Y. 2014) (same); *Henderson v. Martuscello*, No. 10-CV-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, even where counsel adopts a course of action (or inaction) that seems risky, unorthodox[,] or downright ill-advised." (first alteration in original)).  Thus, to satisfy this prong, Petitioner must demonstrate that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citations omitted) (quoting *Strickland*, 466 U.S. at 490).

To satisfy the second prong, "[the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *United States v. Caracappa*, 614 F.3d 30, 49 (2d Cir. 2010) (quotation

marks and alteration omitted).  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694.  "It is not enough for the [petitioner] to

show that the errors had some conceivable effect on the outcome of the proceeding," as

"[v]irtually every act or omission of counsel would meet that test, and not every error that

conceivably could have influenced the outcome undermines the reliability of the result of the

proceeding."  *Id.* at 693 (citation omitted).  "'[P]urely speculative' arguments about the impact of

an error do not establish prejudice."  *DeCarlo v. United States*, No. 11-CV-2175, 2013 WL

1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (alteration in original) (quoting *United States v. Weiss*,

930 F.3d 185, 199 (2d Cir. 1991)).  Moreover, "a court hearing an ineffectiveness claim must

consider the totality of the evidence. . . . [A] verdict or conclusion only weakly supported by the

record is more likely to have been affected by errors than one with overwhelming record

support."  *Strickland*, 466 U.S. at 695–96.

Finally, the Supreme Court has instructed that "there is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the [petitioner]

makes an insufficient showing on one."  *Id.* at 697.

"A defendant who seeks to suppress an identification on the ground that it was obtained

through impermissible police procedures is presumptively entitled to a *Wade* hearing to

'determine whether any police suggestiveness tainted the identification procedure.'"  *Williams v.

Phillips*, 433 F. Supp. 2d 303, 316 (W.D.N.Y. 2006) (quoting *People v. Dixon*, 85 N.Y.2d 218,

225 (1995), and referring to *United States v. Wade*, 388 U.S. 218, 242 (1967)).  The trial court

may dispense with a full *Wade* hearing where the prosecution alleges that the identifying witness

and the defendant are known to each other.  *Id.* at 316; *see also People v. Rodriguez*, 593 N.E.2d

268, 271 (N.Y. 1992) ("When a crime has been committed by a family member, former friend or

long-time acquaintance of a witness there is little or no risk that comments by the police, however suggestive, will lead the witness to identify the wrong person." (emphasis omitted) (quoting *People v. Collins*, 456 N.E.2d 1188, 1191 (N.Y. 1983))). "In that case, the suppression court then may simply require the prosecution, at a so-called *Rodriguez* hearing, to provide evidence of the extent of the relationship between the witness and defendant." *Williams*, 433 F. Supp. 2d at 316; *see also Steinhilber v. Kirkpatrick, M.*, No. 18-CV-1251, 2020 WL 9074808, at *26 (S.D.N.Y. Aug. 21, 2020) (explaining that "[a] *Rodriguez* hearing is held to determine whether the identification of a defendant is confirmatory in nature, that is, whether the witness had sufficient familiarity with the defendant to eliminate the issue of police suggestiveness in the identification process." (internal quotation marks omitted)), *report and recommendation adopted sub nom. Steinhilber v. Kirkpatrick*, No. 18-CV-1251, 2021 WL 1254554 (S.D.N.Y. Apr. 5, 2021).

Construed liberally, Petitioner objects that his counsel should have requested a *Rodriguez* or *Wade* hearing because law enforcement officials presented Simmons with several photo arrays before he identified Petitioner and because the record reveals that Petitioner and Simmons had only had a few encounters over the previous fourteen years. (Pet'r's Obj's 23.) The Court finds these contentions meritless.

As Judge Davison explained, Simmons testified at trial that he and Petitioner grew up in the same neighborhood, that he and Petitioner had gotten into a dispute over drug territory in 1999 that resulted in Simmons shooting and killing an individual who was with Petitioner, and that when he and Petitioner were incarcerated together at Attica Correctional Facility in 2006, Simmons requested to be transferred, and after he was not transferred, got into a fight with Petitioner. (R&R 21–22.) Given these substantial interactions, the Court has little difficulty in

26

determining that Petitioner's counsel did not act unreasonably in failing to request a *Wade* or *Rodriguez* hearing because, as Judge Davison also found, Simmons' identification of Petitioner was "merely confirmatory, and no further hearing could have altered that conclusion." *Steinhilber*, 2020 WL 9074808, at *27; *see also Franco v. Lee*, No. 10-CV-1210, 2013 WL 704655, at *10 (E.D.N.Y. Feb. 26, 2013) (holding that petitioner failed to demonstrate that the state court erred in concluding that an in-court identification was independently reliable where the witness had "substantial interaction with petitioner" and the identification thus was "merely confirmatory and . . . any suggestiveness in the procedure was not of concern").[5]

Although the Court need not reach the second *Strickland* prong, the Court finds that Judge Davison also correctly determined that because Simmons' identification was confirmatory, there was no possibility that the outcome of the trial would have been different if a *Wade* or *Rodriguez* hearing had been requested.  *See Steinhilber*, 2020 WL 9074808, at *27 (holding that "because it is unlikely that a *Rodriguez* hearing would have demonstrated that the . . . identifications were not confirmatory, it is axiomatic that trial counsel could not be deemed ineffective by not requesting such a hearing"); *accord Lynn v. Bliden*, 443 F.3d 238, 249 (2d Cir. 2006) ("In prior habeas cases in which there were claims of ineffective assistance of counsel for failing to request a *Wade* hearing, this Court has demanded some showing of the likelihood for success at the hearing.").

---

[5] The case Petitioner has cited in his letter to the Court, *People v. Alcaraz-Ubiles*, 185 N.Y.S.3d 877 (App. Div. 2023) is not to the contrary, as the Appellate Division found there that the trial court, rather than defense counsel, erred by not holding a mid-trial *Rodriguez* hearing and instead relying on a witness's trial testimony, even though the prosecution had failed to provide advance notice that the witness's identification resulted from a photo array and the witness's trial testimony was insufficient as a matter of law, *id.* at 878.  (*See also* Letter from Jerome Mack to Court (April 11, 2023) (Dkt. No. 35).)

### III.  Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise.  The Court therefore adopts the outcome of Judge Davison's R&R. Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Patrol*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the court certifies in writing that it was not taken in good faith).

The Clerk of Court is directed to mail a copy of this Order to Petitioner and close this case.

SO ORDERED.

Dated:   September 22, 2023
        White Plains, New York

_____
      KENNETH M. KARAS
      United States District Judge